**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| RICHARD CARMONA, § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-06-0228 |
| § | |
| MARIA ELENA RUBIO § | |
| CARMONA, *et al.*, § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (the "Motion") [Doc. # 24]. Plaintiff has responded [Doc. # 33], and Defendants Maria Elena Rubio Carmona ("Helen Carmona"), Radio One of Texas, L.P., and Radio One of Texas I, LLC (collectively, "Radio One") have replied [Doc. # 41]. The matter is ripe for adjudication. After considering the parties' submissions, all maters of record, and applicable legal authorities, the Court concludes that Defendants' Motion should be **denied without prejudice** because there are genuine questions of material fact.

**I.   BACKGROUND**

This case revolves around two trademarks, collectively identified as the "Los Magnificos" marks (the "marks").[1] Plaintiff Richard Carmona contends that he and his brother, Joel Carmona, were equal partners in the "Los Magnificos Low Rider Car Club,"

---

[1]One trademark is simply the words "Los Magnificos." The other is the combination of "Los Magnificos Low Rider Car Club" and an accompanying logo. *See* First Amended Complaint ("Complaint") [Doc. # 14], at 4, ¶ 15; Motion, at 1, n.1.

which they created as teenagers in the 1980s.  According to Plaintiff and other affiants, Plaintiff created the club's name and the marks in question, which the brothers used for a car club and to co-sponsor an annual auto show with the local radio station KBXX.[2]  This arrangement purportedly continued until 1996, when Joel Carmona died unexpectedly and intestate.

Plaintiff asserts that following his brother's death, Joel Carmona's widow, Helen Carmona, illegally claimed ownership of the club, its business, and its trademarks: "the names, 'Los Magnificos,' and 'Los Magnificos Low Rider Car Club,' and associated logo." Complaint, at 4, ¶ 15.  Helen Carmona allegedly struck a separate deal with KBXX to sponsor an annual auto show under the "Los Magnificos" name and using the marks in issue. Plaintiff contends that at that time and since then, he informed both Helen Carmona, Radio One and the prior radio station owner that their then new arrangement regarding the annual car show was improper and in violation of his rights.  Defendants have nevertheless continued to use the disputed marks to jointly sponsor an annual show since 1996.  Plaintiff offers evidence through his own and others' affidavits that he organized various events using the marks and that they were commercial in nature.[3]

---

[2] The uncontroverted evidence establishes that KBXX is not a legal entity, but are the call letters of a radio station operated by Defendant Radio One.  Radio One acquired KBXX in 2000, before which it had no connection to Helen Carmona or the marks.  There is no legal basis for a claim against the call-letters of a radio station and "KBXX-FM" is dismissed from this suit with prejudice.

[3] The Court does not rely on the extensive list of events Plaintiff has supplied in
(continued...)

Plaintiff filed suit in 2006, asserting claims under Section 32 of the Lanham Act, 15 U.S.C. § 1114 (the "Act"), for trademark infringement and trademark dilution, and under Texas law for deceptive trade practices, unfair competition, injury to business reputation, and tortious interference with his contractual and business relationships. Defendant Helen Carmona asserts various counterclaims.[4]

Defendants move for summary judgment dismissing Plaintiff's claims contending that Plaintiff cannot establish his exclusive ownership of the marks. Defendants also urge in the alternative that if Plaintiff ever owned the marks, he abandoned them through disuse. Finally, Defendants urge that even if Plaintiff has a viable claim to present ownership of the marks, his claims here are barred by the equitable doctrine of laches.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

---

[3](...continued)
his own affidavit at 4-6, ¶ 6, because there is an issue as to whether this information was disclosed in discovery. The Court will not permit a party to use evidence at trial that was properly requested in discovery or should have been produced in disclosures required by Rule 26(a) and (e) of the Federal Rules of Civil Procedure. The Court will address the details of admissibility of contested information as a *limine* matter prior to trial. In any event, and without prejudice to Defendants' objections to Plaintiff's reliance on new information at trial, if Defendants want to take Plaintiff's deposition on new matters included in his affidavit, Defendants may do so immediately.

[4] Defendant Helen Carmona seeks declaratory judgment that she has not infringed the marks, and asserts claims of invalidity and unenforceability of the marks, unfair competition and deceptive trade practices.

make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The non-moving party must produce affidavits or other proof containing admissible evidence "such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### III.   ANALYSIS

    A.   **Ownership**

The first element of a common law trademark infringement claim requires Plaintiff to prove that he owns the mark in dispute. *See Emergency One, Inc. v. American Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 267 (4th Cir. 2003) (citing *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97-98 (1918)). Further, the plaintiff in a common law trademark case must prove actual use of the mark in a given market. *Id.* "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Id.* (citing *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996); *see Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991) ("[O]wnership rights flow only from prior appropriation and actual use in the market."); *see generally* 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §§ 16:1, 16.18 (4th ed. 2003)).

Plaintiff claims he obtained the marks in issue in the 1980s when he and his brother created the car club, and has applied for registration with the Patent and Trademark Office.[5] Thus, this case hinges on the validity of Plaintiff's common law claim to the marks.

---

[5]In this suit, Plaintiff erroneously claimed originally to be the "owner of the trademark registration for the trademarks in the United States Patent and Trademark Office" and asserted that the "registration is in full force and effect and is owned by Plaintiff." *See, e.g.,* Affidavit of Richard Carmona ("R. Carmona Affidavit"), Exhibit A to Plaintiff's Responses to Motion ("Response"), at 1, ¶ 4. He now acknowledges that this is not true. Defendants oppose Plaintiff's attempt to register the marks. The Patent and Trademark Office has yet to resolve the dispute.

Ownership of an unregistered trademark may be shown by use. *See Union Nat'l Bank of Texas, Laredo, Texas v. Union Nat'l Bank of Texas, Austin, Texas*, 909 F.2d 839, 842 (5th Cir. 1990) ("Ownership of trademarks is established by use, not by registration."). During discovery, Plaintiff produced documents containing only two examples of use of the marks, both flyers advertising events branded with the "Los Magnificos" label. One of these flyers is a mockup and was intended to serve as a specimen during the trademark application.[6] The other flyer uses the mark to advertise a dance, promoted under the "Los Magnificos" mark, with the notations "GRATIS" and "B.Y.O.B."[7]

Plaintiff avers generally that he has used the marks continually for more than a decade and, as to events prior to 2005, supports this contention merely with the one flyer noted above, his own affidavit, his deposition transcript, and affidavits from others who attest that they are aware of and have participated in Los Magnificos Car Club events that Plaintiff promoted using the disputed marks.[8] Defendants correctly point out that Plaintiff has failed to present sales receipts, financial records, tax returns, contracts, correspondence, or any

---

[6] *See* Deposition of Richard N. Carmona ("R. Carmona Depo."), Motion, Exhibit B to Appendix 1, at 95:10-96:4.

[7] Motion, Exhibit D to Appendix 1, at 36.

[8] *See, e.g.,* Affidavit of Jaime Garza, Response Exhibit B, at 11 ("I continue to buy tickets to the Los Magnificos Car Shows that Richard promotes"); Affidavit of Lupe Pena, Response Exhibit B, at 12 ("During my ownership of ["Players Club" in Stafford, Texas], Los Magnificos Lowrider Club has held an annual dance in February."); Affidavit of John Lemon, Response Exhibit B, at 17 ("I have held Los Magnificos Car Shows and their Annual Show-N-Shine & Barbecue each year since 1999."); R. Carmona Depo., Response Exhibit J, at 70-71, 72-73.

other documents reflecting his commercial use of the marks in connection with any event. While Plaintiff's evidence is quite non-specific, the Court concludes that Defendants' challenges amount largely to attacks on the credibility of Plaintiff and his witnesses, and the weight to which the proof should be accorded. The Court may not make credibility determinations at summary judgment. *See Union Pac. Res. Group, Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 585 (5th Cir. 2001) (affidavits may be sufficient proof, depending on their contents, to demonstrate a genuine question of material fact).[9]

The issue of whether there is sufficient evidence to overcome Defendants' Motion is a close one in this case, particularly in light of the inadmissibility for present purposes of Plaintiff's more specific evidence of events he now claims he organized after 1996.[10] The Court concludes nevertheless that Plaintiff's evidence warrants a trial on the fact issues

---

[9]Plaintiff's affidavit is largely unsupported by documentary evidence and contains various self-serving, purely subjective allegations that lack significant probative value for purposes of defeating summary judgment. However, the affidavit also contains a few statements of objective facts that must be construed in the light most favorable to the nonmovant and may be sufficient to defeat summary judgment. *See Robson*, 420 F.3d at 536 ("The district court was obligated to consider the evidence in the light most favorable and to indulge every reasonable inference from the facts in favor of [the non-Movant]." (citations and internal quotation marks omitted)). "A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 961 n.5 (1st Cir. 1997) (citing *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 706 (1st Cir. 1993)); *see also Velazquez-Garcia v. Horizon Lines Of Puerto Rico, Inc.*, 473 F.3d 11, 18 (1st Cir. 2007).

[10]This observation applies to the other issues of material fact identified below.

concerning Plaintiff's ownership and commercial use of the marks following Joel Carmona's death. Further, the interests of justice are served by an assessment of the factual issues at a trial because, irrespective of dismissal of Plaintiff's claims, there will be a trial on Defendant Helen Carmona's counterclaims which depend on related, although converse, issues. Summary judgment is not warranted on these issues.

### B. Abandonment of the Marks

Defendants argue that even if Plaintiff owned and used the marks at some point, he failed to use them after 1996. Defendants alternatively contend that Plaintiff failed to use the marks for an undefined consecutive three-year period between 1996 and the present, and thus abandoned his rights to the marks as a matter of law. On the current record, summary judgment is not appropriate on the issue of abandonment of the marks under either of Defendants' theories.

Plaintiff presents affidavits and his own deposition that indicate that he continued to use the marks, albeit possibly sporadically, between 1996 and 2004.[11] There is a dearth of detail, but Plaintiff's own testimony and the several affidavits he submits from club members and others demonstrate that this issue should be explored at a trial. Furthermore, although failure to use a trademark for three consecutive years would establish a *prima facie* case of abandonment and would require Plaintiff to bear the burden to prove that he did not abandon one or both of the marks, s*ee Exxon Corp. v. Humble Exploration Co.*, 695 F.2d 96, 99 (5th

---

[11]*See* R. Carmona Depo., at 70-71.

Cir. 1982) (quoting 15 U.S.C. § 1127),  Defendants have not identified any specific three-year period of absence of use.  Plaintiff's affidavits thus are sufficient to create a fact issue as to whether Plaintiff used the mark in commerce at least once during each three-year period between 1996 and 2006, and there is a question of fact as to abandonment.

### C.    Laches

Defendants also argue that, regardless of whether Plaintiff can show ownership of the marks and non-abandonment, he has waited too long to press his claim. The Court analyzes this defense with reference to each Defendant separately.

Laches in a trademark action consists of "three elements: (1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000).  The record reflects that Plaintiff complained to Defendants Helen Carmona and Radio One's predecessor no later than April, 1996, when Plaintiff admits he learned of Defendants' allegedly infringing use of the marks.[12]  On the other hand, the earliest written objections Plaintiff sent to Defendants were cease and desist letters sent in August  2005.  The basic issue on laches is whether Plaintiff asserted his rights to each Defendant in the interim.

As a threshold matter, a defendant with "unclean hands" may not prevail on the equitable defense of laches.  A defendant who engages in infringing activity after being

---

[12]*See* Carmona Depo., at 52:16-21.

notified of the trademark owner's objections does so "at its own peril, without the defenses of laches and acquiescence." *Conan Properties, Inc. v. Conan's Pizza, Inc.*, 752 F.2d 145, 152 (5th Cir. 1985). Plaintiff bears the burden of showing Defendants' unclean hands. *Id.* at 150. Plaintiff's affidavit suggests that Helen Carmona knew in 1996 that Plaintiff asserted rights to the marks in that she and Radio One (through its predecessor) renegotiated the contract Plaintiff and Joel Carmona had worked out, and by moving the meeting to negotiate the final terms.[13] Plaintiff states further that between 1996 and 2004, he sent letters and telephoned Helen Carmona and various people with KBXX (and Radio One) objecting to their use of the marks. Plaintiff also testifies that he tried to complain about Defendants' activities when he visited Defendants' offices and car shows.[14] Defendants have presented contrary evidence.[15] The Court concludes that there is a genuine fact issue about when and how Plaintiff gave each Defendant notice of his claim of ownership of the marks and his objections to that Defendant's use of the marks during the period 1997 to August 2005.

It is noted that there is substantial evidence that between 1996 and 2005, Defendants invested significant sums in the "Los Magnificos" events. Radio One's financial investments

---

[13] R. Carmona Affidavit, at 7, ¶ 9.

[14] R. Carmona Affidavit, Response Exhibit A, at 7-8, ¶¶ 9,12; R. Carmona Depo., at 72-77.

[15] *See, e.g.*, Affidavit of Douglas J. Abernathy, Defendants' Response, Exhibit F, at 3, ¶¶ 13,14. Abernathy's key averments are based on hearsay and Defendants do not submit affidavits of Mark MacMillan, Carl Hamilton and Jerry Steel, the people at Radio One with whom Plaintiff indicates he spoke.

in the car shows are probative on the issue of "prejudice" that likely could have been avoided had Plaintiff pressed his claims more formally and possibly more clearly at an earlier time. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999) (defendant suffered prejudice where it "invested significant amounts of time and money in product development and advertising" before Lanham Act suit was brought). However, there is a genuine fact issue about what delay, if any, occurred as to Plaintiff's assertion of his rights. Summary judgment on laches is not appropriate.

## V.   CONCLUSION

Summary judgment dismissing Plaintiff's federal claims or granting the equitable defense of laches is not appropriate in this case.[16] There are genuine questions of material fact that are best resolved through a trial. The Court must decide the fact issues on which the equitable questions turn, while the jury will have to evaluate the issues regarding the legal claims. Accordingly, it is hereby

**ORDERED** that the Motion for Summary Judgment [Doc. # 24] filed by Defendants Helen Carmona and Radio One is **DENIED.**

**SIGNED** at Houston, Texas, this **16th** day of **February, 2007**.



Nancy F. Atlas
United States District Judge

---

[16]To the extent Defendants seek dismissal of Plaintiff's state law claims, the motion is denied because they are supplemental to the pending federal claims in this case. *See* 28 U.S.C. § 1367(a).